E-Filing

FILED

AUG 1 2 2005

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MARSHALL HALL,                                          No C 03-0118 VRW

          Plaintiff,                                         ORDER

     v

JO ANNE BARNHART, Commissioner of
Social Security,

          Defendant.
_____/

          Plaintiff Marshall Hall appeals from the decision of the

Social Security Administration ("SSA") reevaluating plaintiff's

disability status and denying him social security disability

benefits and supplemental security income ("SSI").  The court now

considers cross motions for summary judgment.  Pl Mot (Doc #11);

Def Mot (Doc #12).  Based upon a review of the administrative

record, the court DENIES plaintiff's motion and GRANTS defendant's

motion.

//

//

United States District Court
For the Northern District of California

I

A

Plaintiff was born on April 29, 1951.  Pl Mot at 1.  He completed the tenth grade in school and has limited abilities in reading and writing.  Administrative Record ("AR") (Doc #7) at 24. From approximately 1985 to 1990, plaintiff worked part-time as a custodian.  AR at 25-26.  Before that, he worked as a mail sorter for two years.  AR at 26.  Prior to these jobs, plaintiff performed steam cleaning.  AR at 27.  Records showed plaintiff's last earnings were from 1990.  AR at 24.

Plaintiff is a former crack cocaine addict who stated he had been sober since late 1997.  AR at 28.  He was first found disabled in 1995 based on drug addiction.  Id.  Currently, plaintiff alleges he suffers from disabilities unrelated to substance abuse that prevent him from returning to work.  According to plaintiff, he was in a car accident in 1994 and began experiencing severe back pain.  AR at 29-30.  Plaintiff stated he cannot sit for longer than fifteen to twenty minutes, or stand for longer than half an hour to an hour, before enduring painful back spasms.  AR at 31-32.  In addition, plaintiff contends he suffers from chronic bronchitis.  AR at 75.  Plaintiff has been prescribed and takes a melange of medications for pain relief and his lungs, as well as for his heart and other ailments.  AR at 30-31, 34-40.

Plaintiff's medical records generally substantiate his illnesses.  On March 13, 1995, plaintiff had an MRI performed, which revealed an abnormal disc in his spine.  AR at 139-40.  On April 30, 1996, plaintiff was examined by Dr James Forestlam of Summit Medical Center.  AR at 143.  Dr Forestlam's impression was

2

United States District Court
For the Northern District of California

1   plaintiff suffered from "lower back strain," and the doctor

2   prescribed Flexeril (a muscle relaxant) and Tylenol #3.  AR at 143.

3   Plaintiff was also seen at the Eastern Health Center from May to

4   September of 1996.  AR at 153-163.  The hand-written progress notes

5   referenced plaintiff's back pain, spasms and chronic bronchitis,

6   with related medications and inhalers.  Id.  On May 16, 1996, a

7   doctor recorded plaintiff smoked two packs [of cigarettes] per day

8   and drank a six pack [of beer] daily.  AR at 162.

9          In late 1996, as part of plaintiff's disability

10  redetermination proceedings, his residual functional capacity was

11  assessed.  AR at 121.  This is a process to help the SSA determine

12  whether claimants can function normally in a work setting despite

13  their physical and mental conditions.  Plaintiff's spinal problem

14  was noted.  AR at 114, 128.  Dr Ronald Bortman also conducted a

15  psychiatric review based on plaintiff's known substance addiction

16  disorder, and found plaintiff was not severely mentally impaired.

17  AR at 129.  In rating plaintiff's functional limitations, Dr

18  Bortman checked off a list showing plaintiff's limitations in daily

19  living, social functioning, and timely completing tasks, were

20  "slight," "slight," and "seldom," respectively.  AR at 136.

21  Finally, Dr Bortman marked "once or twice" on the form for

22  plaintiff's "Episodes of Deterioration or Decompensation in Work or

23  Work-Like Settings Which Cause the Individual to Withdraw from that

24  Situation or to Experience Exacerbation of Signs and Symptoms."

25  Id.

26         On January 2, 1997, plaintiff was seen by Dr Paul Kullman

27  for a consultative psychological examination.  AR at 164.  As to

28  mental status, plaintiff was found to possess normal speech,

United States District Court
For the Northern District of California

1  memory, perception and thought processes, and was in the "low

2  average" range of intelligence.  AR at 165.  Dr Kullman performed

3  various cognitive tests to determine plaintiff's current level of

4  functioning.  AR at 165-66.  Despite "questionable" judgment and

5  insight, plaintiff had "fairly accurate" concentration, could

6  perform simple calculations and "demonstrated the ability to remain

7  focused on all tasks presented during this exam until completion."

8  Id.  In concluding, Dr Kullman stated:  "[I]t is my opinion that

9  the claimant has the mental ability to understand and execute

10  detailed tasks, appropriately interact with supervisors and co-

11  workers, and exercise appropriate judgment in the work place."  AR

12  at 167.  Dr Kullman's primary reservations were the unknown

13  quantities of alcohol or cocaine consumed by plaintiff, and the

14  "possible effects substance abuse may have on daily functioning in

15  a work setting."  Id.

16       Plaintiff more recently underwent a consultative physical

17  examination by Dr James Martin on May 22, 1998.  AR at 168.  Dr

18  Martin confirmed plaintiff's chief complaints of bronchitis, lower

19  back pain and a [benign] tumor-like growth on his left arm.  AR at

20  170.  For the lumbar spine, "claimant had tenderness to palpation *

21  * * with some associated spasm."  Id.  The mass on his left arm had

22  "significant tenderness to palpation."  Id.  Dr Martin also noted

23  plaintiff possibly suffered from coronary artery disease.  Id.  In

24  concluding on plaintiff's limitations, Dr Martin made these key

25  findings:  (1) plaintiff was limited to the occasional lifting of

26  twenty pounds with his right arm only, (2) he could frequently lift

27  ten pounds, (3) there were no limitations to standing or walking, (4)

28  plaintiff could sit for six hours in an eight-hour workday, but

only two hours uninterrupted, (6) he could not balance, stoop, crouch or crawl, could occasionally climb or kneel and (7) should not work around chemicals, dust or fumes that might aggravate his bronchitis and wheezing.  Id at 172-74.

B

Plaintiff received disability benefits in 1995 and 1996 based on drug and alcohol addiction.  AR at 9.  Pursuant to the enactment in 1996 of section 105 of Public Law 104-121, the SSA terminated benefits effective January 1, 1997, because substance abuse was a contributing factor material to the disability determination.  Id.  On August 26, 1996, plaintiff requested a redetermination of his disability status based on severe impairments not related to substance abuse.  Id.  He applied for social security disability benefits under Title II of the Social Security Act ("the Act") and for SSI under Title XVI of the Act. AR at 63.  Plaintiff received a hearing with a disability hearing officer on March 10, 1997 (AR at 63), and was found not disabled on March 14, 1997 (AR at 69).  On March 26, 1997, plaintiff filed a timely request for a hearing.  AR at 73.

The Administrative Law Judge ("ALJ") held a hearing on September 2, 1998, and heard testimony from plaintiff and a vocational expert ("VE"), Ms Jocelyn Jacobs.  AR at 19.  On November 24, 1998, the ALJ issued a decision denying benefits, based on his finding that plaintiff retained the functional capacity to return to the kind of work he did in the past.  AR at 16.

To determine whether plaintiff was entitled to benefits, the ALJ conducted a five-step sequential evaluation of plaintiff's

United States District Court

For the Northern District of California

1  disability, which considered the following questions: (1) was

2  plaintiff currently engaged in substantial gainful activity; (2) did

3  plaintiff have a severe impairment or a combination of impairments;

4  (3) if plaintiff had a severe impairment, did plaintiff have a

5  condition which meets or equals the conditions outlined in the

6  Listing of Impairments (see 20 CFR § 404, Subpt P, App 1); (4) if

7  plaintiff did not have such a condition, was plaintiff capable of

8  performing his past work; and (5) did plaintiff have the residual

9  functional capacity to perform any other work.   20 CFR § 404.1520.

10         Applying the five-step sequential evaluation to plaintiff,

11  the ALJ specifically found: (1) plaintiff had not performed

12  substantial gainful activity over the time period at issue; (2)

13  plaintiff's back pain and chronic bronchitis constituted a severe

14  combination of impairments (meaning his ability to perform basic

15  work activity might be more than minimally affected); and (3) the

16  combination of impairments did not meet the severity of any Listed

17  Impairment.  AR at 10-11.  The ALJ discussed how alcoholism and drug

18  addiction alone cannot be a Listing level impairment.  AR at 11.

19  Additionally, the ALJ considered other Listed Impairments that might

20  be applicable — Listing 1.05C (now Listing 1.04C) for disorders of

21  the spine and Listing 3.00 et seq for respiratory diseases.  Id.

22         At the fourth step of evaluation, the ALJ had to determine

23  whether plaintiff could return to past work.  Id.  If yes, then

24  plaintiff was not disabled.  The ALJ first analyzed all of

25  plaintiff's relevant medical records.  AR at 11-13.  Next, the ALJ

26  turned to the evidence presented at the hearing, and discussed the

27  "several inconsistencies" he had observed.  AR at 14.  One,

28  plaintiff had sat comfortably at the hearing for approximately

United States District Court
For the Northern District of California

1   seventy-five minutes when his testimony was he could not sit for

2   longer than fifteen to twenty minutes before experiencing painful

3   back spasms.  Id.  Two, the ALJ found plaintiff's activities

4   incongruent with someone who is medically disabled — plaintiff

5   admitted to smoking "about a half a pack a day" against his doctors'

6   orders for relieving bronchitis (AR at 44-45), and plaintiff did not

7   take his pain medication as frequently as might be expected (AR at

8   14, 36-38).  Three, when asked point blank whether he would take a

9   light job if offered one, plaintiff responded:  "I can't really

10  actually say."  AR at 42.  However only moments later, when asked if

11  he had done some "odd jobs" in 1996 to make money, plaintiff stated

12  he had mowed lawns, helped people move and worked on cars.  AR at

13  43.  The ALJ hypothesized plaintiff was trying to avoid testifying

14  against his interests.  AR at 14.

15         Finally, the ALJ heard testimony from an impartial VE to

16  determine whether plaintiff could return to past work.  AR at 47.

17  Ms Jacobs' resume showed she worked as a "vocational evaluator," and

18  rehabilitated injured workers.  AR at 178.  She was at the hearing

19  to provide information on the labor market, and opine on whether

20  there were full-time jobs for an individual with plaintiff's

21  limitations.  AR at 50-52.  The ALJ posed a hypothetical question to

22  Ms Jacobs.  AR at 50.  After describing plaintiff, his particular

23  physical limitations and limited abilities in reading and writing,

24  the ALJ asked:  "With those limitations, what job — first of all,

25  could such an individual do the jobs [plaintiff] performed in the

26  past?"  Id.  Ms Jacobs asked some clarifying questions and responded

27  yes, the individual could do "mail-sorting" and other kinds of

28  sorting jobs ("You could be sorting parts.  You could be sorting

7

1  different types of equipment that you don't have to read.")  AR at

2  52.   Having determined plaintiff could return to past relevant work,

3  the ALJ did not address the fifth step in the sequential evaluation.

4          Plaintiff appealed to the SSA Appeals Council.  AR at 5.

5  On November 4, 2002, the Appeals Council denied plaintiff's request

6  for review, and the ALJ's decision became final.  AR at 3.  On

7  January 8, 2003, plaintiff commenced the instant action for judicial

8  review of the final decision.  Compl (Doc #1).  Plaintiff alleges he

9  is disabled and unable to perform past relevant work.  Doc #11 at 3.

10  Plaintiff contends the ALJ erred in relying on the VE's response to

11  an "incomplete hypothetical question."  Id.

12

13                                    II

14          The court's jurisdiction is limited to determining whether

15  the SSA's denial of benefits is supported by substantial evidence in

16  the administrative record.  42 USC § 405(g).  Substantial evidence

17  is more than a scintilla but less than a preponderance; it is such

18  relevant evidence as a reasonable mind might accept as adequate to

19  support a conclusion.  Thomas v Barnhart, 278 F3d 947, 954 (9th Cir

20  2002).  The ALJ's conclusion must be upheld where it is free of

21  legal error and the evidence is susceptible to more than one

22  rational interpretation.  Id.  Determinations of credibility,

23  resolution of conflicts in medical testimony and all other

24  ambiguities are to be resolved by the ALJ.  Morgan v Commissioner of

25  Social Sec Admin, 169 F3d 595, 599 (9th Cir 1999); Andrews v

26  Shalala, 53 F3d 1035, 1039 (9th Cir 1995).

27  \\

28  \\

United States District Court
For the Northern District of California

III

A

The Act provides that certain individuals who are disabled shall receive disability benefits.  Disability is the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 USC § 423(d)(1)(A).  An individual will be found disabled if his impairments are such that "he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy * * *."  42 USC § 423(d)(2)(A).

"An individual shall not be considered to be disabled * * * if alcoholism or drug addiction would * * * be a contributing factor material to the Commissioner's determination that the individual is disabled."  PL 104-121, 1996 HR 3136, Sec 105(a)(1) (Congressional amendment to the Act denying disability benefits to drug addicts and alcoholics).  Hence, substance addiction alone can never be a basis for granting SSI.  Accordingly, meeting the Listed Impairment of "Substance Addiction Disorder" (defined as "[b]ehavioral changes or physical changes associated with the regular use of substances that affect the central nervous system") is only possible by meeting the severity of another distinct impairment — for example, a "Personality Disorder" evaluated under Listing 12.08.  See Listing 12.09, 20 CFR § 404, Subpt P, App 1. "A personality disorder exists when personality traits are inflexible and maladaptive and cause either significant impairment

in social or occupational functioning or subjective distress."   Id.
Among one of the many characteristics and functional limitations of
having a personality disorder (which, to be sure, plaintiff does not
allege he has), is "repeated episodes of decompensation, each of
extended duration."   Id.

B

Plaintiff's sole argument in support of his motion for
summary judgment is that the ALJ erred in relying on the response to
an "incomplete hypothetical question."   Pl Mot at 2.   Plaintiff
specifically points to the ALJ not asking the VE to consider a
limitation Dr Bortman marked on his psychiatric review:   One or two
"episodes of deterioration or decompensation in work * * * which
cause the individual to withdraw * * *."   Id at 3.   This argument
fails to persuade for several reasons.   First, it is far from clear
that plaintiff carried his initial burden of proof that he could not
return to past relevant work, thus <u>requiring</u> the SSA to use a VE's
testimony to dispute that fact.   Second, plaintiff has not
established the ALJ's hypothetical question to the VE was
"incomplete."   Finally, there was sufficient "evidence as a
reasonable mind might accept as adequate to support" (see <u>Thomas</u>,
278 F3d at 954) a conclusion that plaintiff could return to past
relevant work and was not disabled.

Plaintiff must make out a prima facie case of disability
by proving he cannot perform any of his past work.   <u>Thomas</u>, 278 F3d
at 955.   It is unnecessary for an ALJ to take or rely on a VE's
testimony until that point.   <u>Crane v Shalala</u>, 76 F3d 251, 255 (9th
Cir 1996).   Here, even considering allegations of pain are often
subjective and can be debilitating (see, e g, <u>Matthews v Shalala</u>, 10

10

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1    F3d 678, 679 (9th Cir 1993)), plaintiff has not presented <u>any</u>

2    objective medical evidence (such as physician's opinions) that he is

3    precluded from performing work for a sustained period.  Plaintiff's

4    own testimony provided weak support for his case (see AR at 42-43),

5    and the ALJ gave specific reasons for questioning plaintiff's

6    credibility (AR at 13-14).

7            Assuming arguendo that plaintiff has carried his burden of

8    proof, then a hypothetical question to a VE must set out all the

9    limitations and restrictions of the particular plaintiff for

10   evidentiary value.  <u>Matthews</u>, 10 F3d at 681.  Here, the ALJ did

11   that.  The "episodes of deterioration or decompensation" was checked

12   off by one doctor in an effort to glean whether plaintiff suffered

13   from a personality disorder or other identifiable mental disease.

14   Plaintiff did not.  It was permissible for the ALJ to reject this

15   purported functional limitation as unsubstantiated.  <u>Crane</u>, 76 F3d

16   at 253 (ALJ properly rejected "check-off" reports that did not

17   contain any explanation of bases for conclusions).

18           In addition, other medical evidence showed plaintiff

19   exhibited relatively normal mental functions.  The court finds, by

20   all appearances, that the one or two "episodes of deterioration or

21   decompensation" were evaluated as part of, or were caused by,

22   plaintiff's drug and alcohol use (indeed, the applicable form was

23   titled "Section 12.09 Substance Addiction Disorders").  Given that

24   plaintiff was not found to suffer from a <u>separate</u> mental impairment

25   unrelated to substance abuse, material consideration of this

26   functional limitation is specifically prohibited.  This accords with

27   Congress's intention to restrict consideration of drug and alcohol

28   abuse in determining disability.

11

United States District Court

For the Northern District of California

1    In conclusion, the ALJ fairly presented plaintiff's

2  limitations to the VE, and properly relied on the VE's testimony to

3  assist him in reaching a decision.  In addition to the VE's

4  testimony and plaintiff's testimony, the ALJ had plaintiff's medical

5  records and physicians' notes before him.  This record contained

6  substantial evidence to support the conclusion that plaintiff could

7  return to past relevant work and was not disabled.

8

9                                    IV

10    For the foregoing reasons, the court affirms the ALJ's

11  decision to deny benefits.  Accordingly, the court DENIES

12  plaintiff's motion for summary judgment (Doc #11) and GRANTS

13  defendant's motion for summary judgment (Doc #12).

14

15    IT IS SO ORDERED.

16

17    _____

18    VAUGHN R WALKER
       United States District Chief Judge

19

20

21

22

23

24

25

26

27

28